| ¶YELVERTON, Judge.
The Administrative Hearing Officer heard this workers’ compensation case on its full merits but decided it at the threshold question of whether there was an accident, finding there was none and dismissing the action. Diana Laneaux, 33, the claimant, was employed as a patient care technician at Opelousas Artificial Kidney Center. On August 12, 1991, when she bent over to adjust a knob on a dialysis machine, her back popped and she experienced pain. We reverse the hearing officer’s finding as to the occurrence of an accident. We find that an accident clearly occurred. The hearing officer never reached the remaining issues. The record before us is complete. Following the precept of Gonzales v. Xerox Corporation, 320 So.2d 163 l2(La.1975), we decide the remaining issues: we find that the claimant was rendered temporarily totally disabled and award benefits accordingly; we find that the claimant has incurred medical expenses and we award those; we find that the defendants were arbitrary and capricious in denying benefits and award penalties and attorney’s fees; and we assess all costs against the defendants.

FACTS

Diana had been employed at Opelousas Artificial Kidney Center since 1984. She worked steadily except for one layoff period of 11 months and one maternity leave. Her duties included helping patients in and out of wheel chairs and dialysis machines. She also had to fill dialysis jugs and prepare the machines and patients for treatment.
There is no dispute as to what happened on August 12, 1991. She was bending down adjusting the negative pressure on a dialysis machine when she felt something pop in her back. She immediately reported the incident to her supervisor, Carol Babineaux, who subsequently filled out a report. Her supervisor asked her if she wanted to go see a doctor, but Diana said she would try resting at home. Diana went home. When her back began to hurt even worse that afternoon, she went to see Dr. Michael Lee, a chiropractor.
Dr. Lee was the only expert to testify at the hearing. He testified that she told him exactly what had happened earlier that day. His diagnosis was that of a lumbosacral joint injury. In Dr. Lee’s opinion, Diana had gotten herself into a juxtaposition when she bent down, and when she stressed the biomechan-ics of her lower back it popped out. Dr. Lee testified that Diana also suffered from a congenital condition which was asymptomatic at the | -¡time of her injury on August 12. Dr. Lee stated that her congenital problem together with her obesity contributed to the injury occurring.
The defendants argue that her disability was the result of a gradual deterioration or progressive degeneration of her back. They point out that in 1985 Diana sought chiropractic treatment from a Dr. Keith Quebe-deaux for neck and low back pain. Also, in 1990 Diana again sought chiropractic treatment from Dr. Rick Ortego for low back pain. Dr. Ortego’s 1990 diagnosis was that Diana suffered from lumbar facet syndrome. The defendants also call attention to some evidence that Diana had complained to fellow employees of back problems before this accident. From this evidence they argue that because Diana had complained of and had been treated previously for a degenerative low back condition, the events of August 12, 1991 did not directly produce the injuries complained of, but, rather, the disability was the product of a gradual deterioration or progressive degeneration.
Dr. Lee testified that the previous back problems that Diana sought treatment for were not the same as those for which he treated her on and following August 12,1991. He stated that Diana’s complaints to him of pain on the left side of her lower back were consistent with his diagnosis of a lumbar *703 joint or disc problem and not that of lumbar facet syndrome, where the pain in the back would be in the middle of the back. Thus, according to Dr. Lee the earlier manifestations were separate and distinguishable conditions.
This accident happened on a Monday. Diana testified, as did her supervisor, Ms. Babi-neaux, that she had suffered a back incident the previous Saturday, but did not report it as an accident. Ms. Babineaux also I testified that Diana had complained of back problems before but “[n]ot more than the usual backache problems. Other people had backaches.” Ms. Babineaux opined, “Everybody has a backache every once in a while.” There was no evidence at all that the plaintiff ever lost any time from work on account of her back.

ACCIDENT

La.R.S. 23:1021(1) defines what an accident means:
(1) “Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
In ruling that there was no accident in this case, the hearing officer gave the following explanation:
In a case like the present one, where the accident was not a slip and fall type of injury, and which occurred while performing regular duties, and where the claimant has a congenital defect and degeneration in her back, and the complained of disability is a result of these problems becoming symptomatic, the alleged act in order to become compensable under post-1990 law must be unique to the job and not an activity customarily performed in everyday life. The act must involve heavy or strenuous labor or be an unusual activity characteristic to the job, such as in one case that appeared before the Court where the employee riding a tractor plowing a field ruptured a cervical disc because he had to turn his head repeatedly and quickly to look at the field behind him to make sure the rows were even.
In the present case, the symptoms occurred from claimant simply bending over. In the Court’s opinion, this act is an everyday occurrence and not uniquely characteristic of the job. It cannot, therefore, be compensable under post-1990 law.
The hearing officer in ruling that the act causing the employee’s injury “must involve heavy or strenuous labor or be an unusual activity ... ”, made the same misinterpretation as the hearing officer in Rice v. AT & T, 614 So.2d 358 (La.App. 2d Cir.1993). The hearing officer |Bin our present case in effect rewrote the requirements of La.R.S. 23:1021(1), to add the heightened physical work stress requirements of La.R.S. 23:1021(7)(e)(i) which pertains to heart-related or perivascular injuries. The Rice court interpreted the 1989 amendments to La.R.S. 23:1021 definitions of accident to mean that only heart-related or perivascular injuries require heightened physical work stress proof. In the definition of an accident involving a gradually deteriorated or progressively degenerative condition, no such requirement is made. We agree with Rice.
In Rice, the plaintiff was working on the assembly line at AT & T installing parts in cable telephones. She attempted to push her chair closer to the assembly line, while at the same time twisting and turning to reach the parts to be installed on the telephones. As a result of the described movement she felt a tightness in her back, radiating down into her right leg, causing her leg to go numb. She had a long history of back problems and had had surgery as recently as the year before this accident. In Rice, the claimant was found to have had an accident.
In the present case, the record is clear and it is undisputed as to what happened to Diana when she bent over to adjust the knob on the dialysis machine, and felt her back pop and began to experience pain. The accident report filled out by her supervisor described the accident exactly.
Therefore, we find that the hearing officer erred in his application of La.R.S. 23:1021(1). We find that Diana did incur an injury due to *704 an “accident”, within the course and scope of her employment as defined under La.R.S. 23:1021(1). See, also, Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1st Cir.1992).

j¿TEMPORARY TOTAL DISABILITY

Dr.' Lee was the only health care expert who ever examined or treated Diana concerning her accident. Her disability, therefore, must be evaluated from an expert’s standpoint based on his testimony alone.
He stated that it was his opinion to a reasonable degree of medical/chiropractic probability as to the relationship between the August 12, 1991 injury and the complaints of pain and referred pain down the leg for which he treated her. He stated that during the course of his treatment he would like to have referred her to an orthopedist or even a neurosurgeon, but she did not have the money. Dr. Lee testified as to her limitations resulting from the accident. He said she cannot sit or stand for very long periods. She should not lift anything over 25 pounds. He testified that her condition could be easily aggravated.
Diana testified she could not do the job. Therefore, based on the record including Dr. Lee’s expert opinion, Diana is temporarily and totally disabled.
She is entitled to benefits based on an hourly wage of $5.16 from August 12, 1991 until resolution of such disability.

MEDICAL EXPENSES

Opelousas Artificial Kidney Center and its insurer, CNA, are liable for all past medical expenses incurred by Diana as a result of the accident. Diana was treated only by Dr. Lee. He testified as of the date of the hearing that Diana’s medical expenses totaled $11,263.00. The amount was not disputed.

ARBITRARY AND CAPRICIOUS

An employer who fails to investigate an employee’s compensation claim subjects itself to statutory penalties |7and attorney’s fees. Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La.1991); Dowden v. Liberty Mut. Ins. Co., 346 So.2d 1311 (La.App. 3d Cir.), writ denied, 350 So.2d 674 (1977).
Diana’s supervisor, Carol Babineaux, sent an accident report to CNA immediately following the accident. The accident report indicated that the date of accident/disability was 8-12-91, at 12:45 p.m., and that it was reported to the supervisor on that same date. The report indicated it happened on the dialysis floor and that the part of the body affected was the lower back in the form of back pain. The accident was described as “employee was bending over to set negative pressure on patients machine.” Responding to the blanks inquiring as to days away from work and/or length of time on restricted duty, the supervisor indicated that that was “unknown at this time.” The portion of the accident investigation report form dealing with employee history indicated that the supervisor had no knowledge of any previous injuries on the job.
Sixteen days following the accident (less than that from receipt of the supervisor’s accident report) CNA wrote Diana the following letter:
Dear Ms. Laneaux:
This will confirm the fact that we have completed a thorough investigation into the above mentioned claim. At this time, we must advise that we have to deny your claim for workers’ compensation benefits under the state laws of Louisiana Workers’ Compensation.
It appears that there was no specific on the job injury or trauma which caused your problems. Therefore, we will be denying your claim. Any medical received will be forwarded to you for filing with your group.
Sincerely,
/s/ Teresa Nash Teresa Nash
Senior Claim Representative
IsCNA’s denial of liability, rendered less than 16 days after the accident, was its last word. CNA never contacted the claimant to investigate the nature of the accident or her injuries. Although Dr. Lee mailed medical *705 bills to CNA for a while, CNA never contacted him concerning his diagnosis or treatment. CNA rejected the claim apparently based solely on the accident report, without any investigation whatsoever. It would be impossible to divine from the accident report that her condition was the product of a gradual deterioration or progressive degeneration of her back.
Therefore, we find that CNA Insurance was arbitrary and capricious in failing to investigate Diana’s workers’ compensation claim. CNA will be responsible for penalties and attorney’s fees, which we fix at $5,000.
For these reasons it is ordered that there be judgment in favor of Diana F. Laneaux for temporary total benefits payable on the basis of full-time work at $5.16 per hour from August 12, 1991, until she is physically able to return to work; for all past medical expenses incurred, for penalties on the total now due, and attorney’s fees in the amount of $5,000 with interest.
All costs of this appeal are assessed to defendant-appellee Opelousas Artificial Kidney Center and its insurer, CNA.
REVERSED AND RENDERED.