646 So.2d 1030 (1994)
Terri ROBIN
v.
SCHWEGMANN GIANT SUPERMARKETS, INC.
No. CA 93 2310.
Court of Appeal of Louisiana, First Circuit.
November 10, 1994.
Rehearing Denied December 12, 1994.
*1031 Ernest M. Forbes, Denham Springs, for plaintiff-appellee, Terri Robin.
Ann M. Halphen, Baton Rouge, for defendant-appellant, Schwegmann Giant Supermarket.
*1032 Before EDWARDS, SHORTESS and LeBLANC, JJ.
EDWARDS, Judge.
Defendant/appellant, Schwegmann Giant Supermarkets, Inc. (Schwegmann) appeals a judgment of the Office of Worker's Compensation which awarded the plaintiff, Terri Robin (Robin), supplemental earnings benefits, medical benefits, statutory penalties and attorney's fees based on a finding that Robin sustained a compensable work related injury. The primary issue in this appeal is whether Robin's injury resulted from an "accident" as defined in the Worker's Compensation law, specifically LSA-R.S. 23:1021(1).

Facts
Terri Robin was employed as a full service deli supervisor at Schwegmann. Under ordinary circumstances, Robin worked what was known as the "middle" shift, from 12:00 noon until 6:00 or 7:00 PM and she was assisted in the deli by at least two other employees. However, during the week prior to her last day at Schwegmann (October 11, 1991), many employees were out sick with the flu and consequently, she worked alone in the deli from noon until 10:00 PM on three days, from 2:00 PM until 10:00 PM on another day, and she had one day off. The weekend prior to that was inventory weekend, and she worked from 1:00 PM until about midnight on Saturday, with the assistance of one other person and from 7:00 AM until 2:00 PM, alone, on Sunday.
Robin's duties in the deli, which were performed unassisted as a result of the others being out sick with the flu, included lifting turkeys, hams and cheeses, which weighed approximately 10 to 20 pounds each, at customers' requests. In addition, it was her duty to stock the deli, which required her to pull cases of meats, cheeses, and salads, which weighed approximately 45 to 60 pounds, from the deli freezer approximately 8 inches overhead, down to a shelf about chest level and then from the shelf onto a wheeled cart which she rolled to the full service deli. She then unpacked the cases and placed the meats and cheeses into the display case. Every two or three days, she was also required to carry rolls of plastic wrap, which weigh approximately 70 pounds each, from the warehouse into the deli.
Robin testified that during the time she was working alone, she was very tired and her back was hurting. She also testified that she repeatedly asked her immediate supervisor, Sherrie Braud, to try and get her some help because she was tired from having to work alone and her back was hurting. Sherrie Braud testified and corroborated Robin's testimony.
Friday, October 11, 1991, was the last day Robin worked at Schwegmann. She reported to work at noon and worked until close at 10:00 PM. She testified that her back was hurting very badly and she went straight home and soaked in a hot bath. She stated that she went to bed shortly after midnight, and her back was still hurting. At approximately 2:00 AM she was awakened by severe back pain. It was so bad that she got dressed and went to the emergency room at the Medical Center of Baton Rouge. She was diagnosed with lumbar strain and ordered to "bed rest". She left the emergency room and went to Schwegmann to speak with the manager. The assistant manager, Mr. Hassan Chaaban, was on duty, as well as Robin's supervisor, Sherrie Braud. She told them that she had hurt her back the night before and handed Mr. Chaaban the bills and papers from the emergency room. According to Robin, Mr. Chaaban handed the papers back to her and told her there was nothing he could do for her. Robin then went home and did not return to work.
On November 5, 1991, Robin went to Dr. Boyd, a chiropractor, for her continued back pain and was treated by him, without relief, for approximately two months. He referred her to Dr. Kucharchuk, an orthopedic surgeon, whom she saw for the first time on January 9, 1992. Dr. Kucharchuk testified, by deposition, that she was complaining of leg and back pain and told him she had been injured while on the job on Columbus Day, 1991. He ordered a CT scan which showed a central disc herniation at L4-L5. He attempted to treat her with epidural injections, which he testified is the standard of care prior to resorting to surgery. Dr. Kucharchuk also reviewed another CT scan report *1033 that Robin had done in December, 1990, which indicated a slight narrowing of the L4-L5 disc space. He compared this report with the CT scan report he had ordered in 1992 and opined that Robin had a pre-existing cumulative trauma disorder which had been aggravated to such a degree that it caused a disc to rupture. He further explained that due to the cumulative nature of her disorder, the ultimate herniation of the disc was probably due to the type of work Robin was doing at the deli. Robin testified that she discontinued seeing Dr. Kucharchuk because she could not afford it.

Action of the Office of Worker's Compensation
A trial was held on March 10, 1993. The hearing officer found that Robin sustained a work-related injury to her back in October, 1991 which prevented her from earning 90% of her pre-injury wage and she was thereby entitled to supplemental earnings benefits. The hearing officer also found she was entitled to reimbursement of medical expenses incurred and further ordered Schwegmann to continue to provide Robin with medical expenses for treatment with Dr. Kucharchuk as needed. Finally, the hearing officer found that Schwegmann was arbitrary and capricious in refusing to pay benefits and provide medical treatment and awarded statutory penalties and attorney's fees. Schwegmann appealed the judgment arguing that Robin did not have an "accident" within the scope of the worker's compensation law and that the hearing officer erred in awarding her any relief. Robin answered the appeal and contends the hearing officer erred in finding that she was able to return to gainful employment and reducing the amount of benefits as of February 26, 1993.

Applicable Law
In order to be compensable under the worker's compensation laws, an injury must have resulted from an "accident arising out of and in the course of [an employee's] employment." LSA-R.S. 23:1031. Accident is defined in LSA-R.S. 23:1021(1) as follows:
"Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
This definition is the result of an amendment to the statute by Louisiana Acts 1989, No. 454, § 1, effective January 1, 1990.[1]
Schwegmann argues that Robin failed to prove the occurrence of an "event" and that the herniated disc was simply a gradual deterioration or progressive degeneration which is excluded from coverage under LSA-R.S. 1021(1). We do not agree.
While it is true that Dr. Kucharchuk described the herniation as a logical progression of Robin's pre-existing condition, the mere presence of a gradual or deteriorating condition does not preclude a claimant from recovering worker's compensation benefits. In Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1st Cir. 1992), we interpreted LSA-R.S. 23:1021(1) as amended and concluded:
"[A]n otherwise healthy employee with a pre-existing condition is entitled to benefits if she can prove that her work contributed to, aggravated, or accelerated her injury. This is still the meaning of the last clause of section 1021(1), which requires that an injured employee be able to identify the event marking the time when one can identify an injury."
610 So.2d at 955. We went even further and admonished our courts against following cases (see, e.g., Nelson v. Roadway Express, Inc., 573 So.2d 591, 595 n. 3 (La.App. 2nd Cir.), reversed on other grounds, 588 So.2d 350 (La.1991)) which suggested that the amended 1021(1) was meant to exclude from coverage persons who are worn down by their work rather then immediately crippled by it, as such a view is inconsistent with the purpose of the worker's compensation scheme. Dyson, 610 So.2d at 956. Our *1034 brethren on the Third Circuit have recently expounded even further in interpreting the amendments to 1021(1):
We must add our voices to those before us regarding the interpretation of "which is more than a gradual deterioration or progressive degeneration." Surely this phrase does not relate to an injury which is clearly spurred by work activity ... but only to non-work related activities. For to interpret it otherwise, would lead to an absurd result as it would negate the very purpose for which the Worker's Compensation Act was instituted; namely, to provide relief to employees whose work has caused them injury and the inability to work.
Guilbeaux v. Martin Mills, Inc., 93-1359, p. 5 (La.App. 3rd Cir. 5/4/94); 640 So.2d 472, 475, writ denied, 94-1444 (La. 9/23/94); 642 So.2d 1291.
Therefore, we find no merit to Schwegmann's argument that Robin is excluded from coverage on the basis that her injury was a gradual progression of a pre-existing condition. Nor can we accept Schwegmann's argument that Robin failed to prove an "event" marking the identification of her injury. The record contains ample evidence identifying the event which marks the identification of Robin's injury, namely, the performance of her lifting duties in the deli on Friday, October 11, 1991. Robin testified that she experienced back pain throughout the time she was required to work alone, or understaffed, in the deli. However, she also testified that the back pain she experienced the night of October 11, 1991 was a different kind of pain than what she had felt before. This testimony is consistent with Dr. Kucharchuk's summation that Robin was subjected to continuous "micro-trauma" in the performance of her duties in the deli which aggravated her pre-existing condition and cumulated in the ruptured disc. Given these circumstances, it is clear that the event which caused Robin's injury was the lifting duties she performed in the deli at Schwegmann on Friday, October 11, 1991. See Laneaux v. Opelousas Artificial Kidney Center, 93-1264 (La.App. 3rd Cir. 6/1/94); 640 So.2d 701, writ denied, 94-1794 (La. 10/14/94); 643 So.2d 163; Haley v. Beall-Ladymon Corporation, 25-619 (La.App. 2nd Cir. 3/30/94); 634 So.2d 917, writ denied, 94-1109 (La. 6/24/94), 640 So.2d 1348; Schmitt v. City of New Orleans, 632 So.2d 367 (La.App. 4th Cir.1993); and Rice v. AT & T and Travelers Insurance Company, 614 So.2d 358 (La.App. 2nd Cir. 1993).

Supplemental Earnings Benefits
Supplemental Earnings Benefits are awarded when a work-related injury prevents the claimant from earning 90% of his pre-injury wages. LSA-R.S. 23:1221(3). Whether an employee has proved that he is unable to earn wages equal to 90% or more of the wages he earned before the accident is necessarily a facts and circumstances determination in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. Smith v. Louisiana Department of Corrections, 93-1305, p. ___ (La. 2/28/94); 633 So.2d 129, 132. Furthermore, our judicial review of such a determination is governed by the manifest error/clearly wrong standard. Smith, p. ___, 633 So.2d at 132.
In this case, the hearing officer awarded supplemental earnings benefits, without discount, to Robin from the date of the injury until February 23, 1993, the date on which Robin would be able to return to work. In its oral reasons for judgment, the hearing officer stated that Robin was entitled to these benefits because Schwegmann had failed to provide her with vocational rehabilitation. This reasoning misstates the law, as vocational rehabilitation is provided for in LSA-R.S. 23:1226, and these provisions have not been raised in this proceeding, nor are they relevant to a claimant's entitlement to supplemental earnings benefits. Nevertheless, we have reviewed the record and find that it contains sufficient evidence to justify the award for supplemental earnings benefits.
Robin sustained a ruptured disc as the result of her employment in October 1991. She received two epidural injections in attempts to alleviate her pain; however, she has been unable to afford further treatment. Dr. Kucharchuk testified that, as a result of this back injury, Robin should be restricted *1035 to light duty work, in a sedentary position. Robin and her husband both testified regarding her functional abilities after the injury to her back in October, 1991. This testimony established that Robin is still in a great amount of pain which prevents her from performing even the most basic household functions. While she has managed to do some laundry and cooking, she must perform these tasks while sitting, and in pain. Based on this evidence and the applicable law, we cannot say that an award of supplemental earnings benefits is manifestly erroneous.
We also find that the record supports the hearing officer's reduction of supplemental earnings benefits as of February 25, 1993, the date on which there were jobs available to Robin, within her restrictions, which paid minimum wage. Therefore, the amount of benefits was offset by the amount Robin could earn in these positions, until a job can be located which can provide her with 90% or more of her pre-injury wages. In making this determination, the hearing officer considered the testimony of the vocational rehabilitational counseling expert, Michelle LeBlanc Wall. While Ms. Wall provided the court with information about other jobs which provide more income than minimum wage, the hearing officer was not convinced that these other positions were suited to someone with Robin's restrictions. We have reviewed the record, and find no error in the hearing officer's findings; there were sedentary light duty jobs available to Robin as of February, 1993, and her supplemental earnings benefits were properly reduced by the amount earnable by Robin in these positions.

Penalties and Attorney's Fees
Finally, Schwegmann argues that the hearing officer erred in finding that Schwegmann's conduct in refusing to pay benefits and provide medical treatment for Robin's injury was arbitrary and capricious. It is well settled that penalties and attorney's fees are awarded if the employer did not have a reasonable basis on which to controvert a claimant's claim to compensation.
Robin went to the emergency room at approximately 2:00 AM on October 12, 1991, when she first became aware of the severity of the injury sustained to her back during the previous night's shift. Immediately after she was discharged from the hospital, she went to Schwegmann to report the incident. She arrived at approximately 7:00 AM and met with her supervisor, Sherrie Braud, and the assistant manager, Mr. Chaaban. Robin submitted the emergency room medical report to Mr. Chaaban, who merely looked over the report, handed it back to Robin and stated that there was nothing he could do to help her. Mr. Chaaban testified that he then checked to see if the injury had been reported previously to the store's security officer, pursuant to store policy. Finding that Robin's injury had not been reported, Mr. Chaaban stated he did not pursue the claim any further as he had no reason to believe that the injury was work related. The hearing officer found this conduct to be arbitrary and capricious and we find no manifest error. The fact that Robin's injury was not reported to the security officer is merely suggestive that the store's procedures for reporting injuries had not been followed. Given Robin's claim that she had been injured the night before and the emergency room report from 2:00 AM, showing a diagnosis of lumbar strain, it was unreasonable for Schwegmann to ignore the claim without further investigation. Therefore, we find no error in the hearing officer's award of penalties and attorney's fees.
For the foregoing reasons, the judgment below is affirmed. Schwegmann is ordered to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Prior to its amendment, § 1021(1) defined accident as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.