724 So.2d 853 (1998)
Scott A. BRYAN, Plaintiff-Appellee-Appellant,
v.
ALLSTATE TIMBER COMPANY, Defendant-Appellant.
No. 98-840.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1998.
Rehearing Denied January 29, 1999.
*854 Daniel G. Brenner, and William P. Polk, II, Alexandria, for Scott A. Bryan.
Peggy Dean St. John, Alexandria, for Allstate Timber Co.
Before COOKS, SAUNDERS and WOODARD, Judges.
COOKS, Judge.
The defendant appeals a ruling of the Office of Workers' Compensation awarding the claimant temporary total disability benefits and all reasonable and necessary medical expenses. The claimant also appeals, contesting the workers' compensation judge's failure to award penalties and attorney fees. For the following reasons, we affirm.

FACTS
On January 31, 1997, Scott Bryan filed a claim for workers' compensation benefits. He alleged, while engaged in the course of his employment with Jerry Wilson Logging (who was the subcontractor for defendant, Allstate Timber Company), he injured his neck and back operating a "skidder." Specifically, he asserted the skidder "dropped off a large stump and jammed [his] neck and back."
Defendant denied the claimant suffered a single identifiable accidental injury in the course and scope of his employment or that he was disabled. In her oral reasons for judgment, the workers' compensation judge noted there was no evidence of any single identifiable event that caused claimant's injury, however, she concluded "because of the operation of the skidder sometime in the period of work between the 1st of November and the 15th of November [claimant] suffered an accident ..." The workers' compensation judge further found it was "well documented that [claimant] suffered a cervical injury" for which he was entitled to medical treatment and indemnity benefits. Claimant was awarded temporary total disability payments of $266.66 retroactive to November 15, 1996, to continue "until further orders of [the] court." The court also ordered defendant to provide all necessary medical treatment associated with claimant's cervical injury. Penalties and attorney fees were denied.
As noted, defendant lodged this appeal arguing the workers' compensation judge *855 erred in finding claimant suffered an "accident" some time between November 1 and November 15, 1996, and in awarding benefits and medical treatment for this alleged accident. Claimant also appealed the judgment, contending the workers' compensation judge erred in not awarding penalties and attorney fees.

ANALYSIS
It is well settled in workers' compensation cases that appellate courts are required to apply the "manifest errorclearly wrong" standard of review. To determine whether manifest error occurred below, an appellate court must review the record in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. Factual findings of the workers' compensation judge may not be set aside unless they are manifestly erroneous or clearly wrong. Key v. Insurance Co. of North America, 605 So.2d 675 (La.App. 2 Cir.1992). Great weight is given the workers' compensation judge's factual conclusions, reasonable evaluations of credibility, and reasonable inferences of fact. Dixon v. Louisiana Restaurant Ass'n, 561 So.2d 135 (La. App. 3 Cir.1990).

I. Benefits and Medical Treatment
La.R.S. 23:1031 requires a workers' compensation claimant to initially establish "personal injury by accident arising out of and in the course of his employment." Bruno v. Harbert International, Inc., 593 So.2d 357, 360 (La.1992). An accident, for purposes of workers' compensation law, is defined in La.R.S. 23:1021(1) as follows:
"Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
To recover workers' compensation benefits, a claimant must establish by a preponderance of evidence that an accident occurred on the job site and that an injury was sustained. Garner v. Sheats & Frazier, 95-39 (La.App. 3 Cir. 7/5/95); 663 So.2d 57. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Garner, 663 So.2d at 60. The evidence is viewed in a light most favorable to the claimant. When there is proof of an accident and attendant disability, without an intervening cause, it is presumed that the accident caused the disability. Additionally, the trier of fact's determination as to whether a compensable injury was suffered is a question of fact and will not be disturbed unless manifestly erroneous or clearly wrong. Dew v. V.I.S., Inc., 95-141 (La.App. 3 Cir. 11/2/95); 664 So.2d 693.
Defendant's basis for denying Bryan's claim was that he had no "identifiable accident" as required by La.R.S. 23:1021(1). A similar explanation for denial is given in a letter sent by Tracy Myrick, the claims adjuster for defendant's workers' compensation insurer, to the Office of Workers' Compensation, in which she states:
Mr. Bryan has alleged that during the first two weeks of November, 1996, he suffered back pain as a result of operating a bulldozer while employed for Allstate Timber Company. Based on the medical records we received, Mr. Bryan's recorded statement, and information from our insured, we have denied this claim based upon the fact that there is no "identifiable accident." At the time of Mr. Bryan's initial complaints, he had been employed with our insured for approximately four weeks from date of hire, October 4, 1996; therefore, it is our opinion that this is not an occupational injury. Some four months later, during the mediation of February 19, 1997, Mr. Bryan then recalled that on or about November 15, 1996 he had ran [sic] the bulldozer across a large stack of stumps and subsequently had back pain the next day.[1] He did not inform his employer of *856 this incident, nor do the medical records or his previous recorded statement support this statement. Therefore, we stand with our denial of this claim based upon the fact that there is no identifiable accident.
This position is not supported by the jurisprudence. In Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La. App. 1 Cir.1992), the plaintiff was a clerk whose job required her to stand all day making copies. After approximately one month of performing this duty, she began feeling some discomfort in her feet. Two months later, she felt a very sharp pain shoot through her feet as she turned to pick up a bundle of copies. The plaintiff was diagnosed with plantar fasciitis, an inflammation of the heel which was described as a cumulative trauma disorder, commonly found in persons who, like the plaintiff, are overweight, flat-footed, and are required to stand for prolonged periods of time. Notwithstanding that the root cause of the injury was cumulative trauma, the First Circuit held an accident nevertheless occurred, finding the event which precipitated the injury was the turning or pivoting described by the plaintiff. In discussing La.R.S. 23:1021(1), the court stated:
Cases suggesting that the amendments to section 1021(1) were meant to exclude from coverage people like Mrs. Dyson, and many others, who are worn down by their work rather than immediately crippled by it are not consistent with the purpose of the worker's compensation scheme, and are not to be followed.
This court in Guilbeaux v. Martin Mills, Inc., 93-1359 (La.App. 3 Cir. 5/4/94); 640 So.2d 472, 475, writ denied, 94-1444 (La.9/23/94); 642 So.2d 1291, recently expounded even further while interpreting La. R.S. 23:1021(1):
We must add our voices to those before us regarding the interpretation of "which is more than a gradual deterioration or progressive degeneration." Surely this phrase does not relate to an injury which is clearly spurred by work activity ... but only to non-work related activities. For to interpret it otherwise, would lead to an absurd result as it would negate the very purpose for which the Worker's Compensation Act was instituted; namely, to provide relief to employees whose work has caused them injury and the inability to work.
Guilbeaux, 640 So.2d at 475
La.R.S. 23:1021(1) again was addressed in Robin v. Schwegmann Giant Supermarkets, Inc., 93-2310 (La.App. 1 Cir. 11/10/94); 646 So.2d 1030. Ms. Robin was employed as the supervisor of a deli. Because several employees were ill, she was forced to work unassisted for several days. Her duties included lifting turkeys, hams and cheeses, weighing ten to twenty pounds. She also was required to stock the deli, which necessitated moving cases of meats and cheeses weighing forty-five to fifty pounds by pulling them from an overhead position in the freezer. Ms. Robin testified that, during the time she worked alone, she was very tired and her back was hurting. At the time she left work on October 11, 1991, her last day of work, she was experiencing bad back pain. During the night she was awakened by severe back pain, and went to the emergency room of a local hospital. She was diagnosed with a lumbar strain, and bed rest was ordered. In rejecting her employer's contention that Ms. Robin failed to establish an "`event' marking the identification of her injury," as required by La.R.S. 23:1021(1), the court held:
The record contains ample evidence identifying the event which marks the identification of Robin's injury, namely, the performance of her lifting duties in the deli on Friday, October 11, 1991. Robin testified that she experienced back pain throughout the time she was required to work alone, or understaffed, in the deli. However, she also testified that the back pain she experienced the night of October 11, 1991 was a different kind of pain than what she had felt before.... Given these circumstances, it is clear that the event which caused Robin's injury was the lifting duties *857 she performed in the deli at Schwegmann on Friday, October 11, 1991.
Robin, 646 So.2d at 1034.
Defendant argues in brief that Bryan gave inconsistent statements as to how his physical problems started. Despite her rendering judgment in Bryan's favor, the workers' compensation judge did find Bryan exaggerated details of the alleged incident on November 14, 1996.[2] After a thorough review of the record, we find while Bryan did exaggerate some details (which the workers' compensation judge attributed to Bryan's misconception that he had to establish a single identifiable accident to receive benefits), his testimony, as a whole, was sufficient to establish a compensable "accident" for purposes of La.R.S. 23:1021(1).
For the most part, Bryan stated that his physical problems "came to a head" on November 14, 1996, when the skidder he was driving rode over a large pile of stumps resulting in jarring. Bryan worked the following day although "in pain." Realizing her husband was experiencing pain, Bryan's wife transported him to the hospital that evening. The certified record for that visit lists the patient's complaints as "works on skidder [with] whiplash during work and turning head around towards back." At the hospital, Bryan received pain medication, anti-inflammatories, a cervical neck collar, and a statement from the physician regarding his inability to work until further medical tests.
The following day, Bryan and his wife visited the home of his employer, Jerry Wilson. He told Wilson he hurt himself "the other day whenever I jumped them stumps;" and Wilson told him not to return to work. Bryan testified Wilson also advised him to "just go draw unemployment."
On November 21, 1996, Blaine Ussery, the compensation claims handler for the employer, spoke with both Bryan and his wife. Mr. Ussery testified Bryan told him he injured himself when his skidder drove over a large pile of stumps.
Tracy Myrick, the adjuster for the employer's workers' compensation insurer, testified that Bryan told her the alleged accident occurred as follows:
Q: And he [claimant] gave you the statement and described the history to you at that time, is that right?
A: A history. He described one history of operating the machinery for approximately two weeks from November I believe 4th through the 15th, or whatever the last day of employment was, and having neck pain from turning around operating the skidder.
Q: Okay. So you have taken the recorded statement of Scott Bryan who has indicated some sort of difficulty developing from operating a skidder, true, is that a true statement?
A: Correct.
* * *
Q: Okay. And so in here [the recorded statement of November 26, 1996], he indicates that he was involved in operating a skidder, he gives you a time frame and tells you that he was going over some trashtrash stumps and stuff and getting jarred around, and some of the stumps being higher than usual, correct?
A: Yes.
In his disputed claim for compensation filed on February 3, 1997, Bryan alleged that he injured his neck and back while operating a skidder when it "dropped off a large stump and jammed [his] neck and back."
Dr. Elke Werner, who claimant saw on April 10, 1997, testified claimant attributed his medical problems to a situation at work where "another worker had apparently pushed some stumps up in front of him and the skidder went over the stumps and then rapidly came down on the other side of them jarring [him] severely."
We find without merit defendant's argument that Bryan's claim for benefits should be rejected because he failed to prove an "identifiable accident" occurred. Nor can we accept defendant's argument that Bryan failed to prove an "event" marking the identification *858 of his injury. While we agree with the workers' compensation judge that Bryan exaggerated certain details concerning the cause of his injury, his visit to the hospital on November 15, 1996, and the report of injury he filed with his employer the following day support his claim that he was injured on November 14, 1996.
We agree, as found by the workers' compensation judge, that the evidence, as a whole, sufficiently establishes the claimant was injured by constant jarring occasioned by operating the skidder over a relatively short and clearly definable period of time. We also find the record sufficiently establishes a definite time where the claimant began experiencing "disabling pain." On November 14, 1996, the claimant visited the hospital for medical treatment, and reported to his employer that he could no longer continue working.
We also find the medical evidence supports the workers' compensation judge's finding that Bryan suffered from a cervical injury. After his initial hospital visit, Bryan went to Dr. Warren Plauche his family physician, for treatment. Dr. Plauche noted Bryan was suffering from neck spasms and was in "a lot of pain." He diagnosed Bryan with severe cervical strain, and referred him to rehabilitation. Dr. Plauche saw Bryan three times, and did not feel he showed any improvement. In his deposition, Dr. Plauche noted he saw Bryan six months earlier for a physical examination, and there were no complaints or findings of any pain at that time.
Dr. Elke Werner, a neurosurgeon treated Bryan for his cervical complaints. Dr. Werner diagnosed Bryan with experiencing right occipital neuralgia and subjective pain, weakness and numbness in his right upper extremity. She felt it was possible he could have sustained a brachial plexus stretch injury. In a follow up letter to Bryan, Dr. Werner stated the following:
I believe that you have a serious condition affecting your cervical spine (neck), which is affecting your arms. I do not have a final diagnosis at [sic] to this condition, and I believe that further diagnostic testing and referral to a neurosurgeon are very important for you.
Some conditions affecting the cervical spine, if diagnosis and treatment are delayed, can be permanently disabling or even fatal. Some of these conditions can cause quadriplegia (paralysis of all four extremities), numbness, tingling, weakness, loss of coordination, loss of bladder, bowel, and sexual function, all of which can be permanent.
The medical records and testimony confirmed that Bryan's condition is serious, that it prevents him from being able to engage in any employment, and that it is related to the incident of November 14, 1996. He is entitled to compensation benefits and necessary medical treatment for his work-related injury.

II. Penalties and Attorney Fees
Claimant appeals the workers' compensation judge's refusal to award penalties and attorney fees. Despite finding "both the employer and the adjuster could have ... looked for a way to figure out what Mr. Bryan was actually saying," the workers' compensation judge concluded the employer had a legitimate basis to deny the claim. The supreme court has held that penalties and attorney fees pursuant to La.R.S. 23:1201 and La.R.S. 23:1201.2 are applicable only in the absence of a reasonable controversy. Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989). After reviewing the evidence and testimony in the present matter, particularly considering the claimant's exaggerations as to how his injury occurred, we conclude that the trial court was not clearly wrong in finding that the defendant's acts did not warrant an assessment of attorney fees and penalties.

DECREE
For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed to defendant-appellant.
AFFIRMED.
NOTES
[1] We note the letter states claimant was using a bulldozer. There is no evidence that claimant ever operated a bulldozer while employed by defendant. At all times claimant has stated he was injured while operating a skidder.
[2] The workers' compensation judge in particular noted that it was very doubtful that Bryan drove over a four to five foot mound of debris and stumps.