653 So.2d 690 (1995)
Ruby A. BARRILLEAUX
v.
DRYADES SAVINGS & LOAN ASSOCIATION.
No. 94-CA-956.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 1995.
Writ Denied June 2, 1995.
Lyon H. Garrison, Christovich & Kearney, New Orleans, for defendant/appellant.
Roger J. Larue, Jr., Metairie, for plaintiff/appellee.
Before BOWES, GAUDIN and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Dryades Savings and Loan Association (Dryades), appeals a judgment of the Office of Worker's Compensation which awarded the plaintiff, Ruby Barrilleaux, worker's compensation benefits and medical benefits based on a finding that Mrs. Barrilleaux sustained a compensable work-related injury. The primary issue in this appeal is whether the injury resulted from an "accident" as defined in the Worker's Compensation Law, specifically LSA-R.S. 23:1021(1).
At trial Mrs. Barrilleaux testified that she began her employment with Dryades in 1960 and remained employed there until her injury in 1991. In June of 1991, Mrs. Barrilleaux was the manager of loan processing, a desk job which required no physical labor. On June 7, 1991 Dryades was taken over by the Resolution Trust Corporation (RTC), and the plaintiff's job description changed. The RTC intention to sell certain Dryades loans to third parties, necessitated the packaging of all documents connected with those loans. That task was assigned to Mrs. Barrilleaux. It became necessary for her to climb ladders, *691 pull file folders and pack them into large file boxes. After the boxes were filled they had to be labeled, moved and stacked. That also was part of Mrs. Barrilleaux's job. These activities continued until October 31, 1991 when all the loans were sold.
Shortly after her job became more physical, Mrs. Barrilleaux began experiencing lower back pain. It became necessary for her to sleep on a heating pad at night to relieve the pain so that she could continue to work. Sometime in mid-October, when the pain grew considerably worse, Mrs. Barrilleaux became concerned that she may have a kidney infection. She consulted Dr. Boyd who, after an examination, informed Mrs. Barrilleaux that her problem was not caused by her kidneys, but rather by a skeletal/muscular problem in her lower back. Dr. Boyd told her not to lift anything else at work.
When she returned to work the next day Mrs. Barrilleaux informed her RTC supervisor, Mickey Spencer, of the doctor's order not to lift. Mr. Spencer arranged for the boxes to be unstacked and placed in a more convenient place for Mrs. Barrilleaux to access them without lifting. While this eliminated the necessity for lifting, Mrs. Barrilleaux was still required to do a considerable amount of stooping and bending to reach the boxes, now covering the floor and desk of the room in which she worked.
On November 1, 1991, Mrs. Barrilleaux had completed the special assignment for the RTC and was back at her desk job. Nonetheless, her back pain continued to the extent that she was taking over the counter pain medication on a regular basis and sleeping on a heating pad. On Sunday, November 17, 1991, after spending most of the weekend lying on a heating pad, Mrs. Barrilleaux turned to walk out of a room in her home when she experienced a "pop" and sharp pain in her back. She continued to stay at home and attempted to self-medicate with pain relievers and a heating pad. By Wednesday it became apparent to Mrs. Barrilleaux that her back was not improving and that she needed medical help.
Mrs. Barrilleaux consulted Dr. Russo the following morning. After the initial examination and X-rays, Dr. Russo admitted Mrs. Russo into the hospital for further tests and traction. It was discovered that Mrs. Barrilleaux was suffering from a protruding disc in her lower back.
Since that time Mrs. Barrilleaux has been unable to work. She has undergone physical therapy and is still under Dr. Russo's care. She testified that she received long term disability benefits, but her claim for worker's compensation benefits was denied.
The record also contains the deposition of Dr. Russo in which he testifies that he first saw Mrs. Barrilleaux on November 21, 1991 in his office. He stated that he did not get into the history of her illness on that date, but he knew that she was a 53 year-old manager at Dryades who had an acute onset of back pain while at home a few days before the office visit. She reported to Dr. Russo that she had tried bed rest, pain relievers, and heat, to no avail. Dr. Russo stated that he examined his patient and recommended that she be admitted to East Jefferson Hospital. At the hospital Dr. Russo completed his history. He testified that Mrs. Barrilleaux related to him that her job description at Dryades had changed when the company was forced to close its doors by the RTC. She was then required to pack things in boxes and crates and to some lifting. She told Dr. Russo that she was alright for a while with the lifting if she rested her back between strenuous lifts. However, the lifting and bending eventually took its toll and her back pain became severe enough to seek medical help.
Dr. Russo testified that he conducted certain diagnostic tests including an MRI while Mrs. Barrilleaux was hospitalized. Physical findings showed some evidence of central disc flexation limitation. She had pain and spasm in the paravertebral muscles beyond that point. In straight leg raising tests she could only get to 50 degrees bilaterally. The MRI revealed a mild central bulge at 4-5. Dr. Russo explained that, in essence, Mrs. Barrilleaux had a disruption of the disc with a slight bulge that would irritate the nerve root going down the leg.
Mrs. Barrilleaux remained in traction in the hospital for about seven days. During *692 that hospital stay she was treated with pain medication, bed rest, physical therapy, and steroids. When she reached the point at which she was capable of some ambulation, she was given a back brace and sent home for continued bed rest and home physical therapy. She continued physical therapy as an out patient at East Jefferson Hospital. Because surgery is not warranted, the conservative treatment was continuing at the time of trial, and the plaintiff remains on "no work" status.
Dr. Russo further testified that Mrs. Barrilleaux is a small, somewhat frail 53 year-old women who had a desk job for 31 years. He opined that the sudden change in her activities in June of 1991 could have caused a continued weakening of her back which precipitated the incident at home. Dr. Russo stated:
"Well, any time you lift, and of course this woman is kind of frail, and any kind of straining can cause sprains, strains, pulls, and of course you've got muscles and ligaments. In this particular incident she let's say sprained a disc, so all of that is possible, and more probably what happened was she was spraining her back all along there, and then of course this other thing happened too....
* * * * * *
I think repetitive lifting like that, she was aggravating this condition."
When asked if there was any medical relationship between the pains and problems she was experiencing at work and the incident at home, Dr. Russo responded:
"Well, yeah, I'm sure that it was ... she was gradually weakening let's say the disc in area 4-5 with this repetitive stuff she was doing at work and then probably just whatever move she made ...
* * * * * *
Just a move, a twist just may have added a little more tension to that area which would have bulged the discs maybe two or three more millimeters than there already were."
The fact that benefits were denied was acknowledged by the defendant, Dryades, which takes the position that benefits are not due because the plaintiff did not suffer an "accident" as defined by the worker's compensation law. It is the defendant's position that the incident which caused the disability happened at home; the plaintiff did not have an accident arising out of the course and scope of her employment, and has no claim for worker's compensation benefits.
LSA-R.S. 23:1031 provides that an injury must have resulted from an "accident arising out of and in the course of employment" in order to be compensable. Accident is defined in LSA-R.S. 23:1021(1) as follows:
"Accident means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more that simply a gradual deterioration or progressive degeneration."
Dryades takes the position that the legislature amended the above statute in 1989 to require that an injury which is compensable must be related to a specific event and must be more that simply a gradual deterioration or progressive degeneration. While we do not quarrel with defendant's recitation of law, we disagree that in the instant case the plaintiff did not suffer an "accident" within the meaning of the statute. We find the position taken on this issue by our brethren in the First, Second and Third Circuits to be sound. In Dyson v. State Employees Group Ben. Program, 610 So.2d 953 (La.App. 1 Cir.1992), the claimant began to experience light pain in her feet after about one month at her job of standing at the photocopy machine all day. Two months later she suffered a sharp pain in her foot. Her condition was diagnosed as an inflammation in the heel, a cumulative trauma disorder. The court held that the accident took place when she turned to pick up some documents and experienced the sharp pain. The court stated that exclusion of those workers who are worn down by their work rather than immediately crippled by it is not consistent with the purpose of the worker's compensation scheme. See also, Robin v. Schwegmann Giant Supermarkets, Inc., 93 2310 (La.App. 1 Cir.12/12/94), 646 So.2d 1030; *693 Borel v. Dynamic Offshore Contractors, 626 So.2d 565 (La.App. 3 Cir.1993), writ denied 93-2993 (La.1/28/94), 630 So.2d 801; Rice v. AT & T, 614 So.2d 358 (La.App. 2 Cir.1993).
In the instant case we find the evidence supports the finding that the claimant was injured by a series of small strains and sprains to her back over a relatively short and clearly definable period of time. There is a definite point in time at which the claimant's job description changed and the injuries began which is sufficient to constitute the occurrence of an identifiable, work-related event within the meaning of the statute.
Alternatively, the defendant argues that because the final debilitating injury actually occurred at home, the claimant is barred from recovery in this case. We do not agree. The testimony of Dr. Russo clearly shows that Mrs. Barrilleaux's injury resulted from the abuse of her back during the lifting, bending and stooping which became a part of her job when the RTC took over Dryades. When, as in the instant case, a work-related injury is subsequently exacerbated, the aggravation is regarded as a development of the initial accident, and not an intervening cause, even though it occurs away from the employer's premises after employment has terminated. Stewart v. Hospital Affiliates International, Inc., of Baton Rouge, 404 So.2d 944 (La.1981); Bolden v. Georgia Casualty & Surety Co., 363 So.2d 419 (La.1978).
For the above reasons we affirm the judgment of the trial court. All costs of this appeal are assessed to the appellant/defendant.
AFFIRMED.