JaSHORTESS, Judge.
On October 23, 1995, on the premises of Gaylord Chemical Corporation in Bogalusa, a derailed railroad tanker carrying nitrogen tetroxide exploded, emitting a cloud of black and orange smoke. James Edward Tate (plaintiff) was working at the adjacent bag plant owned by Gaylord Container Corporation (Gaylord). He alleges he was exposed to noxious fumes and as a result developed a disabling pulmonary condition. He sued Gaylord and its workers’ compensation insurer, CNA Insurance Company (collectively, defendants), for workers’-compensation bene *26 fits.. The workers’-compensation court (WCC) found plaintiff proved he has a disabling pulmonary problem caused by the chemical exposure. It awarded plaintiff temporary-total-disability benefits, medical and travel expenses, and penalties and attorney fees. Defendants appeal.
Defendants contend plaintiff failed to prove either that he was injured as the result of an accident or that he contracted an occupational illness. Defendants further contend the WCC was clearly wrong in finding plaintiff is totally disabled.
WAS PLAINTIFF INJURED IN AN ACCIDENT?
Plaintiff contends the tank-car explosion was an accident within the meaning of Louisiana Revised Statute 23:1021(1), wherein that term is defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” Defendants contend, however, that plaintiff failed to prove that at the time of the explosion he had objective findings of injury directly produced by the explosion. Defendants note that plaintiff did not immediately seek medical treatment, that when he did seek treatment he did not mention the chemical exposure, and that he did not report the alleged exposure to his employer until December 13, 1995, six weeks after the explosion.
Plaintiff was working at the time of the explosion. He walked onto a catwalk and saw a cloud of smoke rise from the ground. He smelled some foul odors but did not think much about it because there are many different smells around the plant. He stated he was on the catwalk for twenty to twenty-five seconds when his supervisor got an order to evacuate the premises. He went back inside, helped Lshut down two machines, then left the premises. His nose and eyes were burning, but he thought it might have been because his contact lenses were dirty. His skin was burning and irritated, and he was tired and short-winded, but he attributed this to the work he had been doing that day. He went to his mother’s home, two blocks from the plant, but her neighborhood was evacuated a few hours later.
When the plant reopened two days later, his skin and eyes no longer burned, but he had a headache, fatigue, and “small chest pain.” He ignored these symptoms, except for getting Tylenol for the headaches from the plant nurse, until November 11, 1995, when he collapsed at work and was rushed to the Bogalusa Medical Center emergency room. He complained of tightness in his chest and shortness of breath. Doctors there suspected he was having a heart attack, and he was hospitalized for two days. Tests showed his complaints were not heart-related, however.
Plaintiff tried to return to work after that hospitalization, but he was unable to continue working due to his pulmonary and upper-respiratory difficulties and headaches. On November 27, 1995, plaintiff saw Dr. Lee Roy Joyner at Gaylord Family Clinic in Bo-galusa. Joyner is board certified in internal medicine and pulmonology. When he first saw plaintiff, Joyner was practicing family medicine at the clinic, but he now practices pulmonology exclusively. It was Joyner who first connected plaintiffs medical problems to the explosion.
Although plaintiff did not tell any of the doctors who had treated him before Joyner about smelling the foul odor following the explosion, Joyner found this insignificant. Plaintiff testified none of the others asked him whether he had been exposed to chemicals, but Joyner stated many of his patients had not been asked that question by their previous doctors.
Joyner performed several tests on plaintiff, including a bronchoscopy, a bronchial biopsy, and a methacholine-ehallenge test. He diagnosed a severe reactive-airway dysfunction, which is an asthma-like condition triggered by inhaling chemical irritants. Plaintiffs airways constrict when exposed to any strong chemical scent, even everyday odors such as chlorine or perfume. Plaintiff also suffers from reactive-upper-respiratory dysfunction; his sinuses react adversely to chemical irritants. Joyner testified he.had seen plaintiff *27 in acute distress from asthma-like ^attacks and sinus infections twenty to thirty times in approximately twenty months. He testified that, in his opinion, plaintiffs medical problems were caused by his exposure to nitrogen tetroxide following the October 23, 1995, explosion.
Defendants contend Joyner’s opinion is unreliable because it is based on incorrect medical history. Joyner has apparently treated so many patients who were exposed to nitrogen tetroxide in the October explosion that he confused plaintiffs history with someone else’s. He testified that plaintiff was engulfed in a plume of smoke, that he immediately suffered coughing, chest tightness, and other irritant symptoms that persisted for several weeks, and that he expectorated yellow-green sputum within a week or two. Plaintiff admits this history is incorrect. But Joyner testified that even if the history is incorrect, his opinion would not change because his tests reveal plaintiff had enough exposure to an irritant chemical in high enough concentrations for that chemical to cause injury.
Our supreme court recognized in 1940 in Robichaux v. Realty Operators[1] that an incident that does not immediately seem serious may still constitute an “accident” under workers’-eompensation law. The full consequences of a disabling accident are not always apparent when the injury occurs.[2] In Elswick v. Highway Transport,[3] this court recognized that medical intervention and clarity of thought can place the blame on an earlier event that seemed innocuous at the time but was, in fact, the incident that caused a medical problem. A potential workers’ compensation claimant will not be barred from recovery simply because he does not realize or diagnose the full extent of his injury immediately after its occurrence.[4] Thus, an employee who finishes a day’s work without reporting an accident is not barred from recovering compensation on that basis alone.[5]
Neither plaintiff nor the first family practitioner he saw, Dr. Elaine Ballard, initially connected his chest pains with his exposure to nitrogen tetroxide. Five weeks after the accident plaintiff saw Joyner, who first connected his medical | ¡problems with the explosion. Two weeks later, on December 13, 1995, plaintiff filed a report with Gaylord stating his illness was caused by exposure to nitrogen tetroxide. Plaintiff could not report what he did not know. His lack of knowledge of causation is a reasonable explanation for his failure to immediately report his exposure to nitrogen tetroxide to his employer.[6]
Defendants contend plaintiff had preexisting headaches and sinus problems. They point to his employment application, on which he stated that he had taken a Goody’s Headache Powder within the previous 24 hours and that he had had hay fever at some time in his life. They also point to notes from a hearing test taken at the plant, wherein someone had written plaintiff had sinus problems. Plaintiff explained the headache powder was for a hangover, the “hay fever” was sneezing when he was a child, and the notes on the hearing-test report were wrong. This was a credibility matter, and the workers’ compensation judge apparently found plaintiff to be a credible witness. Furthermore, a workers’ compensation claimant who suffers from a preexisting condition may prevail by proving an accident aggravated, accelerated, or combined with the preexisting condition to produce the disability for which compensation is claimed.[7]
*28 Defendants also contend the WCC erred in finding Joyner’s testimony more credible than that of their expert, Dr. Robert N. Jones, a pulmonologist with Tulane Medical Center. Jones examined plaintiff once at defendants’ request. He opined plaintiff did not suffer a lung injury of any significance. His opinion was based largely on the fact that on the day of the explosion plaintiff was not “hauled to the emergency room and found to have signs of respiratory compromise. ...” He admitted, however, that he had never treated a patient who had been exposed to nitrogen tetroxide.
Plaintiff was also examined by Dr. Claude J. Tellis, a pulmonologist with Ochsner Clinic of Baton Rouge, who performed a methacho-line-challenge test and diagnosed reactive-airway disease. Defendants contend Tellis’s diagnosis should |6be disregarded because plaintiff came in contact with perfume shortly before taking the test. Tellis was aware of this, however, and did not qualify his diagnosis.
The WCC’s decision that plaintiff was injured in an accident is a factual finding that we can reverse only if it is clearly wrong.[8] The WCC recognized the discrepancies in the testimony and made credibility determinations favorable to plaintiff. There is a reasonable factual basis in the record for the WCC’s decision, and we find no manifest error therein.
Because we affirm the finding that plaintiff was injured in an accident within the meaning of the workers’ compensation law, we need not address defendants’ contention that plaintiff failed to prove he suffered from an occupational disease pursuant to Revised Statute 23:1031.1. That statute provides an alternative basis for workers’ compensation; it was designed to ameliorate the harshness of a claimant with an occupational disease having to prove an “accident” in order to recover benefits.[9] That statute is not applicable herein as plaintiff has proven he was injured in an accident.
IS PLAINTIFF TOTALLY DISABLED?
Defendants contend the WCC erred in finding plaintiff was temporarily totally disabled. Revised Statute 23:1221(l)(c) requires a claimant seeking benefits for temporary total disability to prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment. Defendants contend plaintiff did not meet this burden of proof.
Whether a claimant is entitled to temporary-total-disability benefits is a question of fact that may not be disturbed on appeal absent manifest error. The trier of fact’s determinations may not be reversed on appeal if they are reasonable in view of the record in its entirety.[10]
The WCC does not discuss in its written reasons its basis for finding plaintiff temporarily totally disabled. It placed great weight on Joyner’s testimony, but Joyner •never opined that plaintiff is unable to engage in any work whatsoever. ^Plaintiff testified he could not return to his former employment because of the strong odors there, but he has not tried to work anywhere that does not have strong odors.
Plaintiff has a bachelors degree from Grambling State University. He majored in business administration, minored in computer science, and made good grades. Before working at the plant, he managed several businesses. Since the accident, he has been attending courses at Delgado Community College in computer repair and was one semester away from completing the program and becoming certified when this case was tried. There is nothing in the record to suggest plaintiff is unable to work in a business atmosphere where he would not be exposed to strong chemicals.
*29 After viewing this record in its entirety, we conclude the WCC’s finding that plaintiff was temporarily totally disabled is unreasonable and clearly wrong. Plaintiff proved only that he cannot return to work at his previous employment, not that he cannot work at all. Thus, we must reverse the portion of the WCC’s judgment awarding plaintiff benefits for temporary total disability.
CONCLUSION
The WCC’s decision that plaintiff was injured in an accident while in the course and scope of his employment is not clearly wrong. The WCC committed manifest error, however, in finding plaintiff was temporarily totally disabled. The portion of the judgment in favor of plaintiff awarding benefits for temporary total disability is reversed. Although defendants appealed the entire judgment, they did not assign as error or brief the WCC’s award of penalties and attorney fees for prematurely terminating plaintiffs workers’-compensation benefits. We must consider defendants’ appeal of that portion of the judgment as abandoned pursuant to Rule 2-12.4, Uniform Rules — Courts of Appeal.
While plaintiff failed to show he was entitled to temporary-total-disability benefits, it appears he may be entitled to supplemental-earnings benefits. In the interest of justice, we remand this case to the WCC to take evidence on this issue!sand determine whether plaintiff is unable to earn 90% or more of his wages at the time of his injury.[11] Costs of this appeal are assessed to defendants.
REVERSED IN PART AND REMANDED.

. 196 So. 23, 26, 195 La. 70, 77 (1940).

. Nelson v. Roadway Express, 588 So.2d 350, 353 (La.1991).

. 96-0014, p. 6 (La.App. 1st Cir. 9/27/96), 680 So.2d 1364, 1368.

. Id. at 6-7, 680 So.2d at 1368; Mackie v. Crown Zellerbach Corp., 444 So.2d 166, 171 (La.App. 1st Cir.1983).

. Moore v. Popeye's Fried Chicken, 96-1889, p. 9 n. 14 (La.App. 1st Cir. 6/20/97), 697 So.2d 5, 11 n. 14.

. See Gordon v. Sandersons Farms, 96-1587, p. 9 (La.App. 1st Cir. 5/9/97), 693 So.2d 1279, 1285.

. Wooley v. E.J.D. Builders, 94-955, p. 13-14 (La.App. 5th Cir. 1/30/96), 668 So.2d 1221, 1228, writ denied, 96-0506 (La.4/8/96), 671 So.2d 338.

. Bruno v. Harbert Int'l, 593 So.2d 357, 361 (La.1992); Vicknair v. The Nature Conservancy, 97-2229, p. 3 (La.App. 1st Cir. 6/29/98), 718 So.2d 476.

. LaCoste v. J. Ray McDermott & Co,, 193 So.2d 779, 782, 250 La. 43, 51 (1967).

. Patterson v. Long, 96-0191, p. 5 (La.App. 1st Cir. 11/8/96), 682 So.2d 1327, 1331, writ denied, 96-2958 (La.2/7/97), 688 So.2d 499.

. See La. Const. art. V, § 10(B); Perrodin v. St. Landry Parish School Board, 95-1563, p. 9 (La.App. 3d Cir. 5/22/96), 676 So.2d 612, 616-617.