742 So.2d 760 (1999)
Jeffrey P. SEARS
v.
BERG INCORPORATED and Zurich American Insurance Group.
No. 99-CA-457.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 1999.
Rehearing Denied October 25, 1999.
*762 Jeffrey C. Napolitano, Bradley P. Naccari, Juge, Napolitano, Guilbeau & Ruli, Metairie, Louisiana, Attorneys for Appellant Berg Incorporated and Zurich American Insurance Group.
Frank A. Bruno, New Orleans, Louisiana, Attorney for Appellee Jeffrey P, Sears.
Court panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
In this workers' compensation matter, after trial, the hearing officer found that the claimant suffered a compensable work-related injury, awarded temporary total disability benefits, ordered the payment of all medical expenses, and assessed penalties and attorney's fees against defendants. For the following reasons, we affirm.
On August 3, 1998, the claimant, Jeffrey P. Sears, filed a disputed claim for compensation with the Office of Workers' Compensation against his employer, defendant, Berg, Inc. (hereafter Berg), and its insurer, defendant, Zurich-American Insurance Group (hereafter Zurich). Sears alleged that he suffered a compensable injury while in the course and scope of his employment with Berg, but that defendants refused to pay any benefits or authorize any medical treatment. The matter proceeded to trial before the Office of Workers' Compensation hearing officer on January 14, 1999.
On February 11, 1999, the hearing officer rendered judgment, finding that Sears suffered a compensable work-related injury, awarded temporary total disability benefits from June 7, 1998 (the date of the accident) through the date of judgment in the amount of $350.00 per week, ordered the payments of all of Sears' medical expenses, and found defendants arbitrary and capricious in their refusal to pay benefits, awarding penalties of $2,000.00 and attorney's fees of $3,000.00. The judgment also assessed all costs against defendants.
*763 Defendants have appealed, assigning four errors: the hearing officer was manifestly erroneous in finding that Sears suffered a work-related "accident" under La. R.S. 23:1021(1); the hearing officer was manifestly erroneous in failing to issue a credit for the portion of medical expenses paid through Sears' health insurance, the premiums for which are funded by Berg; the hearing officer was manifestly erroneous in finding that Sears was entitled to temporary total disability benefits when the hearing officer acknowledged that Sears had been released to light duty; and the hearing officer was manifestly erroneous in finding defendants arbitrary and capricious in failing to pay Sears benefits, and in awarding penalties and attorney's fees. Sears has answered the appeal, requesting additional penalties and attorney's fees for this appeal.
Mr. Sears testified at the January 14, 1999 trial that he began working for Berg in March of 1997 as a commercial air conditioning and heating service technician. Sears further testified that on Sunday, June 7, 1998, he was assigned to help clean a cooling tower at the Belle Promenade Shopping Mall on the Westbank of Jefferson Parish. Sears arrived at the job site at 6:00 a.m. with another worker, and prepared the site by setting up scaffolding and hauling all of the equipment they would need onto the scaffolding. Sears testified that the cooling tower was elevated approximately twelve feet off of the ground and stood another eight feet above that. Sears explained that commercial cooling towers require yearly cleaning, but that this one had not been cleaned in fourteen years.
Sears testified that he was assigned to clean the inside of the tower, which consisted of three cells, each accessible by a two by three foot door. Each cell has cross-sectional beams supporting large fans and motors, which prevented Sears from working upright. Sears testified that during the course of the twelve hours he worked that day, he spent the majority of it hunched over, pressure washing and scraping mud, debris and calcification off of the walls of each cell, then shoveling it out of each cell. Sears also testified that because the air conditioning had to be shut down to the mall while they cleaned the tower, he and his three co-workers worked at a very steady pace to try to complete the job in one day. Other than one five to ten minute break and a half hour lunch break, Sears worked constantly during the twelve hours he was on the job site. Sears further testified that because of the amount of mud and debris he had to clean and then shovel out of each cell in a hunched over position, as well as the virtual non-stop pace he worked, it was one of the most physically-demanding and strenuous jobs he had performed for Berg.
Sears testified that at the end of the day he was physically exhausted, "almost numb,"and that he showered and went straight to bed when he got home. The next morning, Sears' lower back was hurting, and he had "a feeling that I've [n]ever had before." Not wanting to miss work, Sears took some Tylenol and reported to work that day. At work, Sears reported his pain to one of his co-workers who was with him the day before, Richard Mussachia. Sears testified that he did not immediately report the accident to his supervisor because he does not like to complain and he hoped the pain would go away within a few days.
While Sears was able to complete his duties for the next few days, he continued to work in pain and take Tylenol, believing that he had a back strain. On Wednesday of that week, Sears began to notice some shooting pain down his right leg. By Thursday, Sears began taking Naprosyn, an anti-inflammatory, because the shooting pains were getting worse. Sears further testified that on Saturday morning, he awoke with such severe pain and numbness that his fiancee took him to the emergency room, where he was given an injection and prescription pain medication. The following Monday, Sears reported the *764 accident to his supervisor at Berg and saw his primary care physician, Dr. Dawn Puente, who ordered a CT scan of his lumbar spine and referred Sears to a neurosurgeon, Dr. Rand M. Voorhies. The CT scan revealed a ruptured disc at L5-S1, with a large disc fragment impinging upon the right L5 nerve root. On June 26, 1998, Dr. Voorhies performed spinal surgery in an attempt to alleviate Sears' pain and numbness.[1]
Sears testified that at the time of trial, although Dr. Voorhies had released him to light duty, he was still under Dr. Voorhies' care and had not been discharged. He continues to have lower back pain and numbness when he sits or stands for extended lengths of time and testified that he can no longer perform any of the duties he performed at Berg or any of his earlier jobs, which were all in the labor industry.
It is well settled that the claimant in a workers' compensation case has the burden of proving a work-related accident and resulting injury by a preponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La. 1992); Woods v. Ryan Chevrolet, Inc., 30,206 (La.App. 2 Cir.2/25/98), 709 So.2d 251, writ denied 98-1169 (La.6/5/98), 720 So.2d 689. The claimant's testimony may suffice to meet the burden, provided there is no other evidence sufficient to discredit or cast doubt upon the claimant's version of the incident, and his testimony is corroborated by circumstances following the accident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Bruno v. Harbert International, Inc., supra. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends; corroboration may also be provided by medical evidence. Bruno v. Harbert International, Inc., supra. The claimant does not necessarily have to establish the exact cause of the disability, but he must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Woods v. Ryan Chevrolet, Inc., supra.
An Office of Workers' Compensation hearing officer's findings are subject to the same standard of review, manifest error, as a trial court's. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. Under this standard, the reviewing court does not ask whether the factfinder is right or wrong, but whether its conclusion was reasonable. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993).
In defendants' first assignment of error, defendants claim that Sears did not prove that he suffered a work-related "accident" under the applicable workers' compensation statute. La. R.S. 23:1021(1) defines an "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." In Perilloux v. Brown & Root, Inc., 96-321 (La.App. 5 Cir.10/1/96), 692 So.2d 1100, 1102-03, we addressed the identical issue in a factually-similar situation and held:
In the present case, we are asked to determine the correctness of the workmen's compensation judge's exclusion of Perilloux's claim on the basis that his injuries were not compensable because they were the result of a gradual deterioration that occurred over a period of time. In Barrilleaux,[2] a sedentary worker began to lift boxes and perform *765 other such work. While this work was ongoing, she began to experience back pain which grew progressively worse over a period of six weeks. After working in pain for six weeks, the claimant stopped working. In Barrilleaux, this Court held as follows: "In the instant case we find the evidence supports the finding that the claimant was injured by a series of small strains and sprains of her back over a relatively short and clearly definable period of time. There is a definite point in time at which the claimant's job description changed and the injuries began which is sufficient to constitute the occurrence of an identifiable, work related event within the meaning of the statute."
We find similar facts in this case. Mr. Perilloux's job description abruptly changed when the pre-turnaround began and he was engaged with more lifting of heavier weights. Perilloux's back pain began at work during this pre-turnaround period and became worse over a relatively short and clearly definable period of time. (Approximately one week from when the back pain began.) We do not agree with any suggestion or case interpretation that the amendments to Section 1021(1) were meant to exclude from compensation coverage people who are worn down by their work rather than immediately crippled by it.
After reviewing the jurisprudence and carefully examining the evidence presented in the case sub judice, we find that Perilloux proved that he suffered a compensable "accident" under the amended definition.
This case shows that Perilloux's job required heavy physical labor daily, and in connection with his work, he lifted heavy pieces of pipe. Within a very short time afterwards, he felt pain which steadily progressed until he was unable to work in pain any further and reported his condition to his employer. Even though Perilloux can only offer conjecture that it was his lifting of pipe during the pre-turnaround which injured him, we find the close proximity of the onset of pain satisfied the analysis utilized in Barrilleaux, supra.
The facts in this case clearly reveal that Perilloux's onset of pain was almost contemporaneous with his lifting of heavy pipe while at work, and his report of this pain within a short period of time. This is sufficient to satisfy the definition of a work-related accident.
(emphasis added).
Likewise, in the matter before us, Sears's uncontradicted testimony at trial was that during one twelve-hour work day, he spent the majority of the time hunched over in the inner cells of a cooling tower, digging out and lifting "over a hundred" shovelfuls of mud and debris, weighing approximately thirty pounds each, and depositing them out of the confined spaces of the tower.[3] Both of Sears's treating physicians causally related these activities to Sears' ruptured disc. Clearly, Sears suffered a work-related "accident" under La. R.S. 23:1021(1), and the hearing officer's finding with regards to this event was not manifestly erroneous.
In defendants' second assignment of error, defendants allege that pursuant to La. R.S. 23:1212, they are entitled to a credit against the medical expenses the hearing officer ordered them to pay. R.S. 23:1212 provides:
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pay premiums *766 for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
Sears testified at trial that Berg paid his health insurance premiums during his employment with Berg. In defendants' answer to Sears' claim for workers' compensation, defendants asserted the right to this credit. However, to be entitled to a credit under La. R.S. 23:1212, a defendant/employer must judicially assert its right to the credit and submit evidence at trial showing payment of a certain amount of the employee's medical expenses, thereby proving the amount of the credit. Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1 Cir.11/9/95), 665 So.2d 422, 430 (emphasis added). In this matter, Berg failed to introduce any testimony or evidence at trial showing the amount of Sears' health insurance premiums, and any premiums which Berg paid. As defendants failed to carry their burden of proof at trial, the hearing officer did not err in failing to award defendants a credit under R.S. 23:1212.
In defendants' third assignment of error, defendants claim that the hearing officer erred by awarding Sears temporary total disability through the date of Judgment, February 11, 1999, when the hearing officer acknowledged in her Reasons for Judgment that Dr. Voorhies released Sears to light duty on December 2, 1998.
Whether a claimant is entitled to temporary total disability benefits is a question of fact that may not be disturbed on appeal absent manifest error. The trier of fact's determinations may not be reversed on appeal if they are reasonable in view of the record in its entirety. Tate v. Gaylord Container, 97-2944 (La.App. 1 Cir.9/25/98), 720 So.2d 24, 28.
In the matter before us, while Sears testified that Dr. Voorhies had released him to light duty a month prior to trial, Sears also testified that he had not been discharged by Dr. Voorhies, and that he has only worked in labor intensive jobs, none of which he could now perform. None of this testimony was contradicted by defendants, and no testimony or evidence was introduced by the defendants to show that light duty employment was available to Sears, and that Sears was able to perform such employment within Dr. Voorhies' restrictions. Sears further testified at trial that he would be graduating soon from a trade school, which would give him the opportunity to seek specialized, non-labor intensive employment. Based on our review of the record, the hearing officer's decision to award temporary total disability through the date of Judgment is not manifestly erroneous, and will not be disturbed on appeal.
In defendants' fourth assignment of error, defendants assert that their actions in denying Sears' workers' compensation claim were justified based on the nature of his accident, and that the hearing officer erred in finding their actions arbitrary and capricious and in awarding penalties and attorneys' fees. We disagree.
Sears testified at trial that he was not one to complain much and tried to work in pain for one week before his pain and numbness became too severe, and he reported the accident. This testimony was corroborated by the deposition testimony of his co-worker, Richard Mussachia, the trial testimony of another co-worker, Leo Schaefer, and the trial testimony of his father, Peter Sears. After reporting the accident to Mike Burger, the branch manager for Berg, Sears was told to contact Dave Pennington, Berg's safety director who was located at the main office in Shreveport. Sears testified that Pennington stonewalled him, telling him over the phone that it sounded like Sears had a sprained ankle and that he could not help Sears. Sears asked his father, Peter Sears, who testified at trial that he is the safety coordinator for Buck Kreihs Company, *767 to assist him in making a claim. Peter Sears testified that he called Mr. Pennington, who stonewalled him also, telling him that he would have to conduct an investigation, and that his son should just use his health insurance to pay his medical bills. Within a few days, and with no assistance from Berg, Sears had filled out an accident report, had a CT scan performed which clearly showed a ruptured L5-S1 disc impinging on a nerve, and was examined by his primary care physician, Dr. Puente, and a neurosurgeon, Dr. Voorhies, both of whom confirmed that Sears' ruptured disc was caused by the work-related accident.[4]
Sears further testified at trial that after being advised by Dr. Voorhies that surgery would be the only practical way to treat his severe injury, he notified Mr. Burger, and that a day before his surgery, an adjuster came to his home (since he could not walk) and took a statement from him. However, a month after his surgery, since he had not heard back from the insurance company, Sears called Zurich and was told by another adjuster that he would have to give another statement to a Zurich supervisor, which he did over the phone. After several more phone calls to Zurich, and speaking to several more Zurich employees, Sears was finally told that Zurich was denying his claim. When he asked what the reasons were for denying his claim, the adjuster told him she would mail him their reasons, which he never received.
Awards of attorney fees and penalties are not intended to compensate a workers' compensation claimant and thereby make the claimant whole, but rather are intended to discourage certain behaviors on the part of an offending party, such as an employer's and insurer's indifference toward an injured employee. Sharbono v. Steve Lang and Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. The determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact, and the WCJ's finding should not be disturbed on appeal in the absence of manifest error. Oliveaux v. Riverside Nursing Home, 29,419 (La.App. 2 Cir.4/2/97), 691 So.2d 340.
Nation v. D & J Tire, Inc., 31-345 (La. App. 2 Cir.12/9/98), 722 So.2d 364, 366.
After a thorough review of the record, we do not find that the hearing officer erred in finding defendants arbitrary and capricious, nor do we find error in her assessment of $2,000.00 in penalties and $3,000.00 in attorney's fees.
Finally, in Sears' answer to this appeal, he requests additional attorney's fees for having to prepare for and defend this appeal. As we agree with the hearing officer that defendants were arbitrary and capricious in their actions/inactions, and that attorney's fees were properly assessed against defendants by the hearing officer, we find that an additional $1,500.00 in attorney's fees will adequately compensate Sears' counsel for the amount of time and effort necessary in responding to defendants' brief and arguing before this Court. See McCray v. Commercial Union Ins. Co., 618 So.2d 483 (La.App. 4 Cir. 1993).
Therefore, for the foregoing reasons, the judgment of the Office of Workers' Compensation hearing officer is affirmed and amended to include an additional $1,500.00 to the $2,000.00 awarded as attorney's fees. Costs of this appeal are assessed against defendants.
AFFIRMED AND AMENDED.
DALEY, J., concurs in part and dissents in part.
*768 DALEY, J., concurring in part and dissenting in part:
I agree with the majority's holdings in regards to plaintiffs assignments of errors one, two, and four. Regarding Assignment of Error Number Three, I disagree with the majority. The appellant contends the trial court committed an error of law by granting temporary total benefits to claimant after the date he was released by his physician to return to light duty work. I agree with appellant and find that the granting of temporary total compensation benefits after claimant was released by his doctor to return to light duty was a legal error.
According to R.S. 23:1221(1) in order to be eligible for temporary total disability benefits, an employee must prove that he cannot engage in any self-employment or occupation for wages.
In the present case, claimant's treating physician stated that claimant was released to return to work, (with lifting and bending restrictions), six weeks from his last doctor's visit, (December 2, 1998), or about January 12, 1999. Therefore, he is entitled to temporary total disability benefits from the date of the accident, June 7, 1998 until January 12, 1999, and supplemental earnings benefits thereafter. According to R.S. 23:1221(3), supplemental earnings benefits are 66 2/3% of the difference between the earnings at the time of injury and the average wages earned afterward, when the employee was able to light duty work. We cannot calculate the amount of the supplemental earnings benefits because there is no testimony that claimant ever returned to light duty work or what he would have earned had he done so.
Accordingly, I would affirm the decision of the trial court's award of penalties, attorney fees, and amend the judgment to award temporary total disability benefits from the date of the accident until January 12, 1999, and remand this matter to the trial court for a calculation of supplemental earnings benefits from January 12, 1999 until the date of judgment, February 11, 1999.
NOTES
[1] In addition to Mr. Sears' trial testimony, evidence regarding Mr. Sears' medical diagnosis and treatment was presented to the hearing officer in the form of exhibits introduced by both the claimant and defendants at trial, consisting of Sears' doctors' medical records.
[2] Barrilleaux v. Dryades Savings & Loan Association, 94-956 (La.App. 5 Cir.3/28/95), 653 So.2d 690, writ denied, 95-1041 (La.6/2/95), 654 So.2d 1113.
[3] Sears' testimony was corroborated by the deposition testimony of Richard Mussachia, Sears' co-worker who helped Sears clean the inside of the cooling tower.
[4] In fact, in Dr. Voorhies June 25, 1998 report to Dr. Puente, cited by the hearing officer in her Reasons for Judgment, Dr. Voorhies causally related Sears' injury to the accident on June 7, 1998, and described how serious the ruptured disc was, stating: "It is not surprising therefore that Mr. Sears is in severe agony."