hGOTHARD, Judge.
The plaintiff filed suit for worker’s compensation benefits for injuries allegedly received while working for the defendant, Jack Jackson, Inc. After a hearing, the worker’s compensation judge denied plaintiffs claim and dismissed his suit, finding that plaintiff did not prove that an accident occurred and also that plaintiff was a Jones Act seaman and was not entitled to compensation benefits. Plaintiff has appealed. We affirm the decision of the trial court.

FACTS

Mr. John Jackson, owner of Jack Jackson, Inc., testified that his company operates tugboats on the Mississippi River. Plaintiff, Mr. Dale Banks, started working for him in the early part of 1997. He was hired as a deck hand. In September of 1997, plaintiff suffered an injury when he |sslipped on diesel oil. He was placed on light duty, and he became a truck driver/assistant. His duties included picking up supplies, driving the crew to and from the tugs, and going to the store to get supplies and parts for the tugboat. He would also take things that needed to be repaired to the repair facility. He was on this light duty status until the end of February, 1998. The bulk of his duties were on the bank, not the boat. Mr. Jackson testified that “[plaintiff] was still considered a crew member on light duty for the vessel.” His wages were the same, $8.50 an hour, but he worked less hours. He was listed as a utility worker for compensation insurance purposes. Mr. Banks opined that 97% of his work time was spent on land.
On February 20, 1998, while working, plaintiff drove to CGB, a repair facility, to pick up a rudder and wheel. At CGB, the CGB employees loaded it on the trader, attached to the truck. Plaintiff testified *711 that upon return, he and supervisor Paul Lambert unloaded the rudder from the trailer. He and Lambert were lifting a portion of the rudder, the shaft, to put it in the back of the truck, when he felt a burning sensation around his groin area, and a pulling in his back. Plaintiff testified that the shaft was separated from the rudder when the CGB employees loaded it. The weight of the shaft and rudder was 300 to 400 pounds.
Pictures of the rudder were introduced into evidence. In these pictures, the shaft was welded onto the rudder. John Jackson testified that the rudder was returned from CGB in one piece, and that it was not separated as plaintiff claimed. Jackson further testified that had the rudder and shaft been separated, the company did not have the equipment to weld the two back together. The pictures entered into evidence were taken after |4the alleged accident, and they show the two pieces still welded together. Jackson testified that the rudder ordinarily would have been taken off the trailer by tying it to a tree and then pulling the trailer out from under it, as it weighed from 300 to 500 pounds. He further stated that he had never seen anyone pick it up and physically move the rudder. He finally stated that even in pieces, the rudder would not have fit in the back of the pickup truck.
Plaintiffs supervisor, Paul Lambert, had no specific recollection of going with plaintiff to pick up a rudder in late February.
Plaintiff further testified that the next day, February 21st, was the last day he worked. He testified that he told Lambert at that time that he had been injured. Plaintiff suffered a back injury, which necessitated more therapy, and caused a longer recovery from the prior back injury of September, 1997. He also suffered a hernia, for which surgery has been recommended. Plaintiff stated that he has been unable to secure new employment because of the hernia.
Plaintiff also testified that after the accident his employment was terminated, and he was of the opinion that it was because of this second accident, although he was told that he was fired because he let an unlicenced person drive the truck.
Paul Lambert, plaintiffs supervisor, testified via deposition that he was the crew dispatcher with Jack Jackson, Inc. He testified that plaintiff, who was driving crew members to their work, informed Lambert that he was unwell. Plaintiff wasn’t making much sense, and Lambert told him to let another employee finish the route. Lambert found out from several crew members that plaintiff was drinking during crew change, and that one of the | Bcrew members, who may not have had a driver’s license, drove the truck because the crew thought plaintiff was “too out of it.” Both Lambert and Mr. Jackson testified that plaintiff was terminated for intoxication.
Plaintiff testified that after the accident, he did not go to a doctor until March 9, 1998, over three weeks later. Mr. Jackson testified that in March of 1998, he received a letter from plaintiffs chiropractor, and that this was the first notification that plaintiff said he’d been injured on the job.
Plaintiff testified, with regard to his termination, that on the night of the accident he drank a six pack of beer and eight glasses of Crown Royal. The next day, he worked for a short period, then the bottom of his stomach was hurting, and he was hung over. He called Lambert and told him he was not feeling well, and Lambert told him that one of the crew members, Alex Pierre, could finish the drive. Plaintiff was not scheduled to work Sunday. When he went in Monday he was told he was fired for letting Pierre use the crew change van, and because he was drunk.
*712 Alex Pierre testified that he worked for Jack Jackson as a deck hand. On Banks’ last day, he came in for a crew change. Banks wasn’t feeling good, so they called Lambert, who said they could let Pierre do the crew change. Banks did not appear intoxicated, and he said his stomach bothered him.
At trial, plaintiff also stated that before the incident at issue in February of 1997, he had four work related back injuries and three automobile accident back injuries. He filed lawsuits and settled all of those cases.
IfiDr. Dale, plaintiff’s treating chiropractor, testified that he had been treating plaintiff for the September 20th back injury. In the last five years, Dr. Dale has treated him for six injuries, involving back and neck; however, plaintiff has never had surgery on his back. When plaintiff came in on March 9, he diagnosed exacerbation of back injury, and also suspected hernia based on symptoms. Subsequent examination by Dr. Carl Poche revealed the existence of a hernia.
In addition to filing this worker’s compensation claim, plaintiff also filed a Jones Act claim for damages from both the September 20, 1997 and this (February 20, 1998) accident. This case was settled on July 6, 2000.

ANALYSIS

The applicable law in this worker’s compensation case is as follows. We first note that the plaintiff in this matter bears the burden of proving a work related accident:
It is well settled that the claimant in a workers’ compensation case has the burden of proving a work-related accident and resulting injury by a preponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Woods v. Ryan Chevrolet, Inc., 30,206 (La.App. 2 Cir.2/25/98), 709 So.2d 251, writ denied, 98-1169 (La.6/5/98), 720 So.2d 689. The claimant’s testimony may suffice to meet the burden, provided there is no other evidence sufficient to discredit or cast doubt upon the claimant’s version of the incident, and his testimony is corroborated by circumstances following the accident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Bruno v. Harbert International, Inc., supra. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends; corroboration may also be provided by medical evidence. Bruno v. Harbert International, Inc., supra. The claimant does not necessarily have to establish the exact cause of the disability, but he must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Woods v. Ryan Chevrolet, Inc., supra.
Sears v. Berg Inc., 99-457 (La.App. 5 Cir. 9/28/99), 742 So.2d 760, 764.
|7The worker’s compensation judge is the finder of fact. This court may not set aside those findings unless clearly wrong or manifestly erroneous.
In a worker’s compensation case, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). Therefore, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be *713 disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1830, 1333 (La.1978). See also, Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94) 633 So.2d 129, 132.
Woodrum v. Olive Garden Restaurant, 99-130 (La.App. 5 Cir. 5/19/99), 735 So.2d 911, 920.
In this case, the trial judge found that plaintiff failed to prove a work related accident by a preponderance of the evidence. Our review of the evidence presented fails to find any manifest error in that determination.
In brief to this court, plaintiff alleges that the worker’s compensation judge applied the wrong standard, and that the court found that plaintiff did not meet his burden of proof only because he did not produce a corroborating witness. We disagree. The evidence at trial showed that the alleged accident could not have happened as it was described by the plaintiff. The testimony cast serious doubt on the plaintiffs credibility. From the trial court’s oral reasons, it can be concluded that the judge did not believe the plaintiff when he testified that an accident occurred. This finding of credibility cannot be overturned, absent manifest error. We find no manifest error in the trial judge’s determination that plaintiff failed to prove | sthat an accident occurred. Accordingly, we do not reach the issue of whether plaintiff was a Jones Act seaman.

CONCLUSION

For the above discussed reasons, the decision of the worker’s compensation court is affirmed.
AFFIRMED.