STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-266

RICHARD STERLING

VERSUS

ASPLUNDH TREE EXPERT CO.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 00-05514
SHARON MORROW, WORKERS COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

AFFIRMED.

Michael Benny Miller
Miller & Miller
P. O. Box 1630
Crowley, LA 70527-1630
Telephone: (337) 785-9500
COUNSEL FOR:
    Plaintiff-Appellee/Richard Sterling

Christopher Richard Philipp
P. O. Box 2369
Lafayette, LA 70502-2369
Telephone: (337) 235-9478
COUNSEL FOR:
    Defendant-Appellant/Asplundh Tree Expert Co.

THIBODEAUX, Judge.

In this workers' compensation case, defendant, Asplundh Tree Expert Company (Asplundh), appeals the judgment of the Workers' Compensation Judge (WCJ) in favor of plaintiff, Richard Sterling. The WCJ found that Sterling suffered an accident and consequent back injury while in the course and scope of his employment with Asplundh, and was improperly denied payment of workers' compensation benefits. Because Asplundh failed to pay Sterling workers' compensation benefits, the WCJ awarded penalties in the amount of $4,000.00 and attorney fees in the amount of $10,950.00 as well as expenses in the amount of $737.01. Further, Asplundh appeals the trial court's calculation of Sterling's average weekly wage rate which included his paid vacation days and paid legal holidays.

For the following reasons, we affirm the judgment of the Office of Workers' Compensation.

I.

**ISSUES**

We shall consider:

(1) whether the WCJ committed error in finding that Sterling was involved in an accident while in the course and scope of his employment that caused injury to his back and, in doing so, awarding him supplemental earnings benefits (SEB) and payment for medical treatment; (2) whether the WCJ's calculation of Sterling's SEBs was proper; and, (3) whether the WCJ committed error in awarding Sterling penalties and attorney fees.

1

## FACTS

There is no dispute that in September 1999, Sterling was employed by Asplundh as a laborer, and that he was working on Avery Island. He had been employed by Asplundh since October 18, 1993. Sterling's job duties working for the tree trimming company included pulling brush, as well as picking up tree trimmings and putting them into a chipper. Sterling testified that on September 8, 1999, he was pulling brush from the bottom of a hill to take to the top of the hill on Avery Island, in New Iberia. He was working with Alibie Tauzin, who was trimming the trees from around the power lines. The hill was wet and slippery. As Sterling pulled the tree trimmings up the hill, he felt a sudden pain in his back. At that point, he did not tell Tauzin he hurt his back. He took a deep breath and kept on working. Later in the evening, he informed Tauzin about his earlier back pain. He told Tauzin he "wasn't doing good . . . . [He] was hurting on [his] back."

Sterling was taking pain pills at the time and did nothing about his back. He testified that he did not think it was serious and went to work the next day, September 9, 1999. He did not do well the next day. On September 10, 1999, Sterling went to University Medical Center (UMC) because his back was still hurting. He told the attending physician that he hurt his back at work while pulling brush up a hill. He was treated for back pain. He did not go back to work. Sterling testified that he told his supervisor, Steve Venable, about hurting his back. He also told Venable that his doctor recommended that he take a CT scan of his back. Venable denies that Sterling told him about his back. Tauzin also denies that Sterling told him about his back hurting. Both testified that had they been told about Sterling hurting

2

his back on the job, he would have had to take a drug test as per Asplundh's company policy. Sterling did not take a drug test.

Venable testified that Asplundh continued to pay Sterling his regular wages of $360.00 per week because he was such a good employee and had been working with Asplundh for many years. However, payment of his wages was transferred to another Asplundh crew headed by Keith Lewis, not the crew on which Sterling worked. Asplundh stopped paying Sterling's wages on February 12, 2000. Thereafter, on July 12, 2000, Sterling filed a claim for payment of disability and medical expenses as well as penalties and attorney fees. Asplundh answered Sterling's claim denying that he sustained an injury while in the course and scope of his employment.

After trial in this matter, the WCJ ruled from the bench in favor of Sterling and ordered Asplundh to pay him SEB in the amount of $283.85 per week beginning September 10, 1999. Asplundh was given a dollar-for-dollar credit for all wages it paid Sterling in lieu of workers' compensation benefits. Asplundh was also ordered to pay for Sterling's reasonable medical treatment related to his back injury. Lastly, Asplundh was ordered to pay $4,000.00 in penalties and $10,950.00 in attorney fees along with expenses in the amount of $737.01. From this adverse judgment, Asplundh appeals.

III.

**LAW AND DISCUSSION**

***Standard of Review***

The standard of review in a workers' compensation hearing was set out in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556:

3

Factual findings in workers' compensation cases are subject to the manifest error clearly wrong standard of review. *Smith v. Louisiana Dep't of Corrections,* 93-1305, p. 4 (La. 2/28/94), 633 So.2d 129, 132; *Freeman v. Poulon/Weed Eater,* 93-1530, pp. 4-5 (La. 1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman,* 93-1530 at p. 5, 630 So.2d at 737-38; *Stobart v. State,* 617 So.2d 880, 882 (La.1993); *Mart v. Hill,* 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart,* 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

### *Occurrence of Accident While in the Course and Scope of Employment*

Asplundh asserts that the WCJ committed error in finding that Sterling proved the occurrence of an accident while in the course and scope of his employment resulting in an injury to his back.

Louisiana Revised Statutes 23:1031 requires a workers' compensation claimant to initially establish "personal injury by accident out of and in the course of his employment." *Bruno v. Harbert International, Inc.,* 593 So.2d 357, 360 (La.1992). Louisiana Revised Statutes 23:1021 defines an accident, for purposes of workers' compensation:

Accident means an unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

4

In *Bryan v. Allstate Timber Co.*, 98-840, pp. 3-4 (La.App. 3 Cir. 12/16/98); 724 So.2d 853, 855, this court discussed the claimant's burden of proving that an accident occurred:

> To recover workers' compensation benefits, a claimant must establish by a preponderance of the evidence that an accident occurred on the job site and that an injury was sustained. *Garner v. Sheats & Frazier*, 95-39 (La.App. 3 Cir. 7/5/95); 663 So.2d 57. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. [*Id.*] at 60. The evidence is viewed in a light most favorable to the claimant. When there is proof of an accident and attendant disability, without an intervening cause, it is presumed that the accident caused the disability.

In the present case, Sterling presented the only testimony regarding the occurrence of an accident since there were no witnesses to the accident. At the time of the accident, Sterling was a sixty-three year old man who had been working as a laborer for Asplundh for many years. He testified that on the date of the accident, he hurt his back pulling tree brush up a hill. At the time of trial in August 2002, Sterling was sixty-six years old. Sterling testified that he did not tell his co-worker Alibie Tauzin about hurting his back until the evening because he did not think it was serious and thought the pain would go away. He went back to work the next day. However, Tauzin testified that Sterling never told him that he hurt his back. On September 10, 1999, two days after Sterling hurt his back, he did not go to work. Tauzin testified that he thought Sterling took off from work because of problems with his pre-existing hernia. In his deposition, Tauzin stated that Sterling "might have mentioned on the phone that he might need back surgery."

5

The record reveals that Sterling went to the hospital on September 10, 1999, due to back pain that radiated down to his right leg. The record also reveals that Sterling had a hernia. However, Sterling testified that his hernia never stopped him from working. The testimony of other Asplundh employees supports this claim. He eventually had surgery to repair the hernia. Sterling also testified that the UMC gave him a "no work" slip which he brought to his supervisor, Venable. Ms. Joyce Prejean, the woman who lived with Sterling, accompanied him to Venable's office and was with him when he delivered the no-work slip. Venable denies having any knowledge that Sterling stopped working due to an accident at work and injury to his back. Instead, Venable insists that Sterling was out of work due to problems associated with his hernia.

The WCJ found the testimony of Keith Lewis to be "significant" with respect to whether Sterling sustained an accident resulting in injury to his back while in the course and scope of his employment. Lewis, a general foreman for Asplundh who has worked for the company approximately nine years, testified that in early September 1999, he was told by Venable to put Sterling on his payroll. Sterling had not previously worked on Lewis' crew. He further stated that he was told by Venable that Sterling had been hurt on the job in New Iberia, and the company wanted to continue paying him his salary; thus, the reason he was being put on Lewis' payroll. Lewis found out during the first week that Sterling was on his payroll and that Sterling had hurt his back, although he did not hear about the injury to Sterling's back directly from Venable or Sterling but from other workers. In February 2000, he was told to take Sterling off of his payroll. Lewis admitted that he did not witness Sterling's accident because Sterling did not work on his crew. The reason Venable told Lewis to place Sterling on his payroll was because Lewis normally had a three

6

man crew, but at the time only had two men, himself and another worker; thus, it would be easy to add Sterling to his payroll.

In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. The evidence in the record contradicting Sterling's testimony that an accident occurred while he was in the course and scope of his employment with Asplundh on September 8, 1999, includes the testimony of Venable, who stated that Sterling did not tell him about his back injury until February 2000. When Sterling began missing work in September, Venable thought that it was because of his hernia and its eventual surgical repair. Venable further testified that after being told in February 2000 about Sterling's back injury that occurred in September 1999, he went to Sterling's home to have an accident report filled out. The accident report was then turned in to Asplundh's insurer, Crawford. Although Sterling and his girlfriend testified that he gave Venable a "no work" slip due to his back injury, Venable denied ever receiving such a slip. Tauzin and Brad LeGros testified similarly.

Clearly, there are two permissible views of the evidence; that Asplundh knew that Sterling injured his back while on the job in September 1999, or that it did not find out until early February 2000. The standard by which we review lower court decisions demands great deference to the trier of fact's findings, when, as in the present case, such findings are based on determinations regarding the credibility of witnesses. *See Blackwell v. Kershenstine*, 97-210 (La.App. 3 Cir. 2/27/97), 690 So.2d 247, *writ denied*, 97-0545 (La. 3/14/97) 689 So.2d 1390. In her reasons for judgment, the WCJ stated that Lewis was a "significant" witness and that his testimony was

"pivotal." It is apparent that the WCJ chose to believe the testimony of Lewis and Sterling over that of Venable, LeGros and Tauzin. In fact, the WCJ felt that she was being lied to by the latter three witnesses. We find that the record supports the conclusion that Sterling had an accident while in the course and scope of his employment with Asplundh. His medical records sufficiently corroborate that he injured his back on September 8, 1999, as a result of an on-the-job accident. Accordingly, the WCJ's finding that Sterling sustained an accident resulting in a back injury is not erroneous and is affirmed.

### *Calculation of Wage Rate and Amount of SEB*

Asplundh contends that the WCJ committed error in calculating Sterling's SEB rate when she included in her calculation of his average weekly wage rate, ten days of paid vacation time as well as five days of paid holiday time. To support its argument, Asplundh relies on the amendment to La.R.S. 23:1021(10), which gives instructions on how an employee's average weekly wage is to be determined, effective August 15, 1999, when calculating hourly wages. Louisiana Revised Statutes 23:1021(10)(f) states:

> Income tax. In determination of "wages" and the average weekly wage at the time of the accident, no amount shall be included for any benefit or form of compensation which is not taxable to an employee for federal income tax purposes; however, any amount withheld by the employer to fund any nontaxable or tax-deferred benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee's wages and average weekly wage including but not limited to any amount withheld by the employer to fund any health insurance benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee's wage and average weekly wage.

Sterling argues that the amendment did not provide for the wholesale exclusion of the value of fringe benefits from the calculation of the average weekly wage rate.

In accordance with the provisions of La.R.S. 23:1021(10)(f), the issue with respect to the inclusion of paid holiday and vacation time in the calculation of a claimant's average weekly wage rate is whether those forms of compensation are taxable or not. Asplundh asserts, without citing any authority therefor, that Sterling's paid holiday and vacation time is not taxable and, therefore, should not have been included in the calculation of his average weekly wage rate for purposes of determining the amount of SEBs to which he would be entitled. On the other hand, Sterling asserts just as strongly and also without citing any authority, that those fringe benefits are taxable and therefore the WCJ was correct to include them in her calculation of Sterling's average weekly wage rate. There is no dispute between the parties that paid vacation and holidays are fringe benefits. Any fringe benefit that an employer provides is taxable and must be included in the recipient's pay unless that fringe benefit is specifically excluded by the law. EMPLOYER'S TAX GUIDE TO FRINGE BENEFITS PUB. 15-B (Dept. of the Treasury, Internal Rev. Serv., Jan. 2003). Excluded fringe benefits include:

> Accident and death benefits.
> Achievement awards.
> Archer medical savings accounts.
> Athletic facilities.
> De minimis (minimal benefits).
> Dependent care assistance.
> Educational assistance.
> Employee discounts.
> Employee stock options.
> Group-term life insurance coverage.
> Lodging on your business premises.
> Meals.
> Moving expense reimbursements.
> No-additional-cost services.

9

*Id.*, Section 2. Paid holiday and vacation fringe benefits are not the type of fringe benefits excluded from income taxation. Thus, on this issue we cannot say that the WCJ was incorrect in her determination that the calculation of Sterling's average weekly wage rate—for determining the amount of SEBs to which he is entitled—should include his paid holiday and vacation time.

### *Penalties and Attorney Fees*

The WCJ awarded Sterling penalties in the amount of $4,000.00 because Asplundh failed to pay Sterling's medical bills and workers' compensation benefits associated with the back injury he sustained as a result of his on-the-job accident. The WCJ also awarded attorney fees in the amount of $10,950.00. Louisiana Revised Statutes 23:1201 provides for the payment by the employer and/or its insurer of workers' compensation benefits. In La.R.S. 23:1201(F) it provides in pertinent part:

> Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.

Subparagraph (2) of La.R.S. 23:1201(F) states: "This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." Asplundh argues that Sterling's claim was reasonably controverted because he never told his supervisors about his accident or that he hurt his back while on the job. Venable testified that he assumed Sterling was having problems with his preexisting hernia condition. However, Lewis testified that he found out from other employees, about a week after Sterling's

accident, that Sterling hurt his back pulling tree brush up a hill. Lewis also knew that Sterling hurt himself while working in New Iberia. Additionally, Sterling's hospital records at UMC two days after the work accident show that he was seen at the hospital due to his back problems. The WCJ stated that she thought "someone was lying to [her], and [she did not] think it was Mr. Sterling." In essence, she felt that Asplundh had knowledge of Sterling's accident and his injury, but did not, for whatever reasons, want to pay him workers' compensation benefits. Whether the WCJ finds that an employer reasonably controverts a claim for benefits is a question of fact. *Lyons v. Bechtel Corporation and AIU*, 00-0364 (La.App. 3 Cir. 12/27/00), 788 So.2d 34, *writ denied*, 787 So.2d 966 (La. 3/23/01). We find no manifest error in the WCJ's finding that Asplundh did not reasonably controvert Sterling's claim. Therefore, we affirm the WCJ's award of penalties and attorney fees.

IV.

**CONCLUSION**

For the reasons assigned, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Asplundh Tree Expert Company.

**AFFIRMED.**

11